IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHOICE ENGE (R-40791), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19-cv-06151 |
| v. ) | |
| ) | Judge John F. Kness |
| JOSEPH DETHROW, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Choice Enge, a prisoner at Stateville Correctional Center proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against correctional officers Joseph Dethrow, William Brown, Donnell Sykes, and Terrel Pork (the "IDOC Defendants"), as well as nurse Lilly Diaz. Plaintiff alleges that, in May 2017, the IDOC Defendants wrongfully confiscated and destroyed his medical shoe and shoe lift. Plaintiff further alleges that Defendant Diaz failed to provide Plaintiff with appropriate medical treatment for several months after the medical shoe and lift were confiscated. Defendants now seek summary judgment. For the reasons that follow, Defendants' motions for summary judgment are granted.

**I.    BACKGROUND**

Plaintiff was in custody with the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center ("Stateville") at the time of the allegations stated in his Amended Complaint. (Dkt. 113, 116, at ¶ 1.) On February 20, 2017, Plaintiff received his first medical shoe lift because his left leg is shorter than his right leg.

Plaintiff claims that if he does not wear his medical shoe lift for an extended period, he will experience lower back pain. (Dkt. 109, at ¶ 7.) Plaintiff does not, however, need to wear his prosthetic shoe continuously. (Dkt. 109, at ¶ 11.) When Plaintiff leaves his cell to take showers, he does not wear his orthopedic shoe, but instead wears his shower shoes. (*Id.*, at ¶ 12.) Plaintiff does not feel pain during short periods of time without his orthopedic shoe. (*Id.*, at ¶ 13.)

Plaintiff alleges that, on May 21, 2017, he and his cellmate were taken from their cell located in general population to a temporary holding cell ("bullpen"). (Dkt. 109, ¶ 8.) Plaintiff was taken to the bullpen with only his shower shoes and did not bring his medical shoe lift. (*Id.*) Plaintiff was moved to the bullpen to allow officers from Internal Affairs to perform a cell shakedown for contraband items. (Dkt. 113 at ¶ 2.) After Internal Affairs officers discovered contraband in Plaintiff's cell, Plaintiff was transferred to a cell in the segregation unit. (Dkt. 123, at 2.)

Plaintiff alleges that the IDOC Defendants lost or destroyed his medical shoe lift during the search of his general population cell and the subsequent transfer of his belongings to the segregation unit cell. (Dkt. 109, ¶ 9; Dkt. 123, at 2–3.) None of the Defendants was present when the Internal Affairs officers came to Plaintiff's cell and sent him to the bullpen. (Dkt. 113, at ¶ 3.) Plaintiff has no knowledge concerning the identity of the individual or individuals that collected his property and transported it from his previous general population cell to his subsequent cell in segregation. (*Id.*, at ¶ 4.) None of the Defendants had any contact with the Plaintiff's personal property at any point during its transportation from Plaintiff's cell in general population to

2

Plaintiff's cell in segregation (*Id.*, at ¶ 5.)

None of the Defendant Officers has any authority to order a replacement medical shoe lift. At Stateville, medical devices for individuals in custody, including orthopedic shoes, are prescribed by an outside medical provider, Hanger Clinic, Prosthetics and Orthotics, and then approved by physicians at Wexford Health Sources, Inc. (*Id.*, at ¶ 6.) As correctional officers, none of the IDOC Defendants could prescribe medical devices, such as orthopedic shoes, to Plaintiff or any other individual in custody at Stateville. (*Id.*, at ¶ 7.) None of the IDOC Defendants is a medical professional, none has any formal medical training, and none interfered with or caused a delay in Plaintiff obtaining a replacement prosthetic shoe. (*Id.*, at ¶¶ 8, 9.)

On May 24, 2017, three days after Plaintiff's medical shoe went missing, Plaintiff attended a medical evaluation with the former Medical Director of Stateville, Dr. Saleh Obaisi, in connection with abdominal issues. Plaintiff did not make any complaints regarding lower back pain or not having the medical shoe lifts during this evaluation. During this visit, Dr. Obaisi instructed Plaintiff to take 500 mg of Tylenol for 90 days for an unrelated medical condition. (*Id.*, at ¶ 10.)

Plaintiff then commenced a series of visits with Stateville Nurse Lilly Diaz and other medical providers. Defendant Diaz's job duties are clinical and include administering medication, seeing patients on nurse sick call, seeing patients in the infirmary, and assisting providers during their sick call. (Dkt. 109, at ¶ 2.) Nurses can only administer over-the-counter pain medications that are listed on the IDOC

3

nursing protocols, such as Tylenol and Ibuprofen. (*Id.*, at ¶ 6.) Plaintiff testified that Tylenol relieves the lower back pain he experiences when he does not wear the medical shoe lift. (*Id.*, at ¶ 7.)

Nurse Diaz and Plaintiff first met on June 12, 2017. On that occasion, Nurse Diaz noted that Plaintiff asked, "I'm supposed to have a doctor's appointment but when[?]" Nurse Diaz further noted that Plaintiff was in "no acute distress" and "voice[d] no [complaints] at this time." In addition, Nurse Diaz documented that Plaintiff was "made aware per RN note 6/10/17 M.D. [appointment] upcoming." (*Id.*, at ¶ 13.)

On July 3, 2017, Plaintiff met again with Nurse Diaz and complained of back pain. Nurse Diaz performed a physical examination and noted that Plaintiff had full range of motion and that she did not observe any limitations of movement. Nurse Diaz further noted that Plaintiff was taking Tylenol 500mg. Nurse Diaz instructed Plaintiff to continue taking his Tylenol, and to avoid sporting activities for two weeks. She offered him Ibuprofen but Plaintiff declined. In addition, Nurse Diaz scheduled Plaintiff for an appointment with Dr. Obaisi for July 5, 2017. (*Id.*, at ¶ 19.)

On July 5, 2017, Plaintiff attended a medical evaluation with Dr. Obaisi. During this appointment, Plaintiff and Dr. Obaisi discussed the missing medical shoe lift. In addition, Dr. Obaisi prescribed Plaintiff Tylenol 500mg. (*Id.*, at ¶ 20.)

On July 18, 2017, Plaintiff was seen on the provider sick call by Physician's Assistant, LaTanya Williams ("Ms. Williams"). During that meeting, Plaintiff and Ms. Williams discussed that his medical shoe lift was missing. Plaintiff reported that

4

Dr. Obaisi had previously made an inquiry to IDOC correctional staff regarding the location of the medical shoe lift, but they did not have it. Ms. Williams scheduled Plaintiff for an appointment with Dr. Obaisi and advised him to continue taking all current medications. (*Id.*, at ¶ 22.)

On August 2, 2017, Plaintiff presented to Nurse Diaz with complaints of back pain. Nurse Diaz performed an examination and noted that she did not observe any limitation of movement. Nurse Diaz further noted that Plaintiff was taking Tylenol 500mg. Nurse Diaz administered Plaintiff Ibuprofen, instructed Plaintiff to continue taking his Tylenol, and to avoid sporting activities for two weeks. (*Id.*, at ¶ 23.)

On August 4, 2017, Plaintiff was seen on the provider sick call by Ms. Williams. During this occasion, Plaintiff and Ms. Williams discussed that his medical shoe lift was missing. Plaintiff stated that he believed that his medical shoe lift might be in his old cellmate's property box, and that he thought his old cellmate had been transferred to a different IDOC facility. Ms. Williams prescribed Motrin to Plaintiff, scheduled him for an appointment with Dr. Obaisi, and advised him to continue taking all current medications. (*Id.*, at ¶ 24.)

From June 12, 2017, through August 8, 2017, Plaintiff was seen by Defendant Nurse Diaz five times and was seen by Dr. Obaisi twice. (*Id.*, pgs. 4-7.) On August 15, 2017, Dr. Obaisi noted that he had obtained approval for Plaintiff to receive a new medical shoe and shoe lift. (*Id.*, at ¶ 27.) On October 26, 2017, Plaintiff was fitted with new a new medical shoe and shoe lift. (*Id.*, at ¶ 29.)

5

## II. LEGAL STANDARD

Summary judgment is "appropriate and should be rendered when the pleadings, depositions, answers to interrogatories, together with affidavits, show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party that seeks summary judgment bears the initial burden to establish there is no question of fact that will be outcome determinative in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). When the moving party "has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)). A moving party can thus prevail "just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

A party opposing summary judgment cannot rely on general conclusory allegations but must instead "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Valentine v. Joliet Township High School Dist.*, 802 F.2d 981, 986 (7th Cir. 1986). Although inferences must be viewed in a light most favorable to the nonmoving party, *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990), the Court is required to evaluate only reasonable inferences, not every conceivable inference that could be drawn, *Spring v. Sheboygan Area School*

6

*Dist.*, 865 F.2d 883, 886 (7th Cir. 1989). If the evidence is only colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a). Under Local Rule 56.1(d), each asserted fact "must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2). Defendants filed a statement of material facts along with their motions for summary judgment. (*See* Dkt. 113, 115.) Each substantive assertion of fact in the Local Rule 56.1(a)(2) statement is supported by evidentiary material in the record. Defendants also filed and served on Plaintiff a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. (*See* Dkt. 114.)

Although Plaintiff is proceeding *pro se*, Defendants served a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1. Plaintiff, however, filed a noncompliant Local Rule 56.1(b)(3)(B) response. (Dkt. 124, 129.) Other than those that admit Defendants' assertions, nearly every paragraph of Plaintiff's Local Rule 56.1(b)(3)(B) response fails to respond to Defendants' factual assertions, fails to cite specific record evidence to support his denial of Defendants' factual assertions, and cites record evidence that does not contravene Defendants' factual assertions. Accordingly, the Court will disregard the noncompliant portions

of Plaintiff's Local Rule 56.1(b)(3)(B) response. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015) ("[T]he district court did not abuse its discretion in disregarding the facts contained in [the nonmovant's] statement of additional facts that were not supported by proper citations to the record."); *Bryant v. Bd. of Educ., Dist. 228*, 347 F. App'x 250, 253 (7th Cir. 2009) ("The district court was entitled to disregard those assertions in [the nonmovant's] proposed statement of facts that violated Local Rule 56.1 by not being properly supported . . . .").

Accordingly, the court accepts as true the facts set forth in Defendants' Local Rule 56.1(a)(3) statements "to the extent th[ose] facts [a]re supported by admissible and docketed evidence." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) (internal quotation marks omitted) ("According to well-established Seventh Circuit law, [the nonmovant's] noncompliance [with Local Rule 56.1(b)(3)(B)] meant that the district court could exercise its discretion to accept [the movant's] statements of fact as undisputed."); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (affirming district court's adoption of defendant officers' version of events because *pro se* litigant submitted non-complaint Rule 56.1 statement); *see also Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [movant's] factual submissions as unopposed, because the [nonmovant] failed to contest them in the form required by Local Rule 56.1(b).

8

## III. DISCUSSION

Plaintiff contends that Defendants violated the Eighth Amendment—displayed deliberate indifference to Plaintiff's continuous back pain—by denying Plaintiff medical care and treatment in relation to his misplaced orthopedic shoes.[1] As the Seventh Circuit has explained, prison officials "violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Prison employees must provide inmates with medical care that is adequate in view of both the severity of the inmate's conditions and professional norms. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). Deliberate indifference constitutes unnecessary and wanton infliction of pain, which is "repugnant to the conscience of mankind," or which is "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." *Estelle* at 106-07. Negligence, gross negligence, or even tortious recklessness is not enough. *Id.*

An inmate alleging that prison officials failed to provide adequate medical care must show that he suffered from "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Walker v.*

---

[1] In his response opposing summary judgment, Plaintiff argues that Defendants provided no argument addressing Plaintiff's additional claim for intentional infliction of emotional distress. (Dkt. 123, at 11–12.) But the Court's second merit review order in response to Plaintiff's Second Amended Complaint permitted Plaintiff to proceed only on his Eighth Amendment claim of deliberate indifference claim. (*See* Dkt. 39, at 2 (citing Dkt. 10).) Accordingly, the Court strikes the portions of Plaintiff's response (Dkt. 123, at 11–12) addressing the intentional infliction of emotional distress claim.

9

*Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

The IDOC Defendants contend they are entitled to summary judgment because: (1) Defendant Sykes was not deliberately indifferent to Plaintiff's serious medical needs before his arrival in segregation; (2) Defendants were not deliberately indifferent to Plaintiff's serious medical needs after Plaintiff's arrival in segregation; and (3) Plaintiff was not denied medical treatment. (Dkt. 112, pg. 6-8.)

Although the Court is sympathetic to Plaintiff's frustration over not being able to possess his prosthetic shoe for several months, that frustration does not equate to a viable legal claim under the Eighth Amendment. Plaintiff himself believes that his prosthetic shoe was either lost or destroyed during his transfer to segregation. (Dkt.40, pg. 8.) Plaintiff told Defendant Sykes about his missing orthopedic shoe before he was transferred to segregation, but that fact does not, by itself, establish that Defendant Sykes knew of a serious risk to Plaintiff's health but disregarded it. As Plaintiff testified in his deposition, he does not have to, and in fact does not, wear his orthopedic shoe at all times when out of his cell. (Dkt. 113, pgs. 9, 17.) Based on Plaintiff's own testimony, Defendants' action of moving Plaintiff to segregation without his orthopedic shoe does not arise to the level of intentional wrongdoing or criminal recklessness needed to prevail on a claim of deliberate indifference to serious medical needs. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

10

In addition, the record is clear that the IDOC Defendants are correctional officers, not medical professionals. A defendant not trained in medical care, such as a correctional officer, may generally rely on the expertise of medical personnel who are providing care. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). Plaintiff acknowledges that the IDOC Defendants do not have medical training. (Dkt. 124, pg. 5.) Plaintiff also acknowledges that he "had numerous appointments to the health care unit" during the time period in question. (*Id.*, pgs. 1-9.) The IDOC Defendants were entitled to depend on the health care staff to assess Plaintiff's needs and to provide appropriate care and treatment, and the Eighth Amendment did not require the IDOC Defendants to ensure that Plaintiff's medical appointments or treatment were realized. *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (lay persons who are not responsible for administering medical treatment are entitled to rely on and defer to the judgment of medical professionals). These principles show that the IDOC Defendants were not deliberately indifferent to Plaintiff's serious medical needs after his arrival to segregation.

Defendant Nurse Diaz contends that she too is entitled to summary judgment because she responded reasonably in the medical treatment and care she provided Plaintiff. (Dkt. 110, pg. 8.) That an inmate has received some treatment does not necessarily defeat a claim for deliberate indifference. To be sure, "[b]latantly inappropriate medical treatment" or persisting with a course of treatment healthcare providers know to be ineffective may be actionable under 42 U.S.C. § 1983. *Perez*, 792 F.3d at 777 (cleaned up). But a prison official "is free from liability if he 'responded

11

reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). When considering whether care evinces deliberate indifference to a serious medical need, the Court must examine the totality of an inmate's medical care. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). To infer deliberate indifference on the basis of a prison physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997).

Considered in total, the care that Defendant Nurse Diaz provided in conjunction with Dr. Obaisi and Physician Assistant Williams negates any inference of deliberate indifference. From June 12, 2017 through August 8, 2017, Plaintiff was seen by Defendant Nurse Diaz five times. During that time, Nurse Diaz instructed Plaintiff to continue taking his Tylenol and to avoid sporting activities for two weeks. Plaintiff testified that Tylenol relieves the lower back pain he experiences when he does not wear the medical shoe lift. Defendant Nurse Diaz also scheduled Plaintiff for an appointment with Dr. Obaisi, the first of which was on July 5, 2017. During that appointment, Plaintiff and Dr. Obaisi discussed the missing medical shoe lift, and Dr. Obaisi prescribed Plaintiff Tylenol 500mg. A month later, Plaintiff was seen on the provider sick call by Ms. Williams. During that visit, Ms. Williams prescribed Motrin to Plaintiff and scheduled him for another appointment with Dr. Obaisi. On August 15, 2017, Dr. Obaisi noted that he had obtained approval for Plaintiff to

12

receive a new medical shoe and shoe lift. On October 26, 2017, Plaintiff was fitted with new a new medical shoe and shoe lift.

Based on these facts, the Court holds that no reasonable jury could conclude, based on the totality of care, that Defendant Nurse Diaz was deliberately indifferent to Plaintiff's medical needs. *See Kyles v. Williams*, 679 F. App'x 497, 499-500 (7th Cir. 2017) (prison medical professionals were entitled to summary judgment because a series of appointments and reasonable medical attention for prisoner's knee issues demonstrated that providers did not consciously disregard a serious risk of harm); *Wilson v. Adams,* 901 F.3d 816, 821–22 (7th Cir. 2018) (affirming grant of summary judgment on claim of deliberate indifference where "totality" of care showed proper attention to inmate's pain).

In his response to the motions for summary judgment, Plaintiff appears to suggest that his treatment could have been faster or that he somehow suffered from a delay in care. But Plaintiff presents no reasoned argument or evidence in support of that suggestion. Plaintiff was prescribed Tylenol in response to his complaints of pain, and that prescription eased his pain. These record facts do not reflect inadequate care. But even if Plaintiff could demonstrate that Defendant Nurse Diaz could have referred Plaintiff to Dr. Obaisi earlier to obtain another orthopedic shoe, no reasonable factfinder could conclude, in view of the totality of care Plaintiff received, that any delay in care was anything other than an isolated instance of neglect—and negligence does not equal deliberate indifference. *Estelle*, 429 U.S. at 105-06; *Gutierrez*, 111 F.3d at 1375; *Sellers v. Henman*, 41 F.3d 1100, 1102-03 (7th

13

Cir. 1994). Plaintiff received continuous and extensive medical treatment over the five months in question. Accordingly, summary judgment is similarly warranted for Defendant Nurse Diaz.

## IV. CONCLUSION

For the reasons provided above, the Court grants Defendants' motions for summary judgment (Dkt. 110 and 111). A final judgment in favor of Defendants will be entered separately. If Plaintiff wishes to appeal this decision, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the full $505 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be nonmeritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. Any motion under Rule 59(e), however, must be filed within 28 days of the entry of this judgment. Fed. R. Civ. P. 59(e). That deadline cannot be extended. Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline

14

for filing an appeal until the Rule 59(e) motion is ruled upon. Fed. R. App. P. 4(a)(4)(A)(iv).

Any motion under Rule 60(b) must be filed within a reasonable time and, if the motion seeks relief under Rule 60(b)(1), (2), or (3), it must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). That deadline also cannot be extended. Fed. R. Civ. P. 6(b)(2). A motion under Rule 60(b) suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. Fed. R. App. P. 4(a)(4)(A)(vi).

SO ORDERED in No. 19-cv-06151.

Date: February 13, 2023

_____
JOHN F. KNESS
United States District Judge